**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATHANIEL CARTER, JR., | ) | CASE NO. 5:18-cv-02764 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NEIL TURNER, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION**# |
| Respondent. | ) | |

Petitioner, Nathaniel Carter, Jr. (Petitioner or Carter), challenges the constitutionality of his conviction in the case of *State v. Carter*, Summit County Court of Common Pleas Case No. 2014-06-1821. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Warden Neil Turner (Respondent) has filed an Answer/Return of Writ. (R. 10). Petitioner has filed a Traverse (R. 16), to which Respondent did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I. Procedural History[1]

### A. Conviction

On July 7, 2014, a Summit County Grand Jury charged Carter with one count of aggravated

---

[1] A summary of the facts supporting Petitioner's convictions can be found in the "Review on the Merits" section *infra*, wherein the court addresses the fourth ground for relief.

murder in violation of Ohio Revised Code (O.R.C.) § 2903.01(A) with firearm specifications; one count of murder in violation of O.R.C. § 2903.02(B) with firearm specifications, two counts of felonious assault in violation of O.R.C. § 2903.11(A)(2) each with firearm specifications, having weapons while under disability in violation of O.R.C. § 2923.13(A)(3), and tampering with evidence in violation of O.R.C. § 2921.12(A)(1). (R. 10-1, PageID# 96-101, Exh. 1). Carter, through counsel, entered a plea of not guilty. (R. 10-1, PageID# 102, Exh. 2).

On July 30, 2014, the court set a trial date for September 15, 2014. (R. 10-1, PageID# 103, Exh. 3). The trial date was vacated due to the court's unavailability and was reset for October 27, 2014. (R. 10-1, PageID# 104, Exh. 4). After a jury trial, on November 5, 2014, Carter was found not guilty of aggravated murder, but guilty of the remaining counts of the indictment. (R. 10-1, PageID# 105-120, Exhs. 5 & 6). On January 23, 2015, Carter was ordered to serve an aggregate sentence of nineteen years to life in prison. (R. 10-1, PageID# 121-124, Exh. 7).

## B.   Direct Appeal

On March 11, 2015, Carter, through new counsel, filed a notice of appeal and a motion for leave to file a delayed appeal with the state appellate court. (R. 10-1, PageID# 125-128, Exhs. 8 & 9). The state appellate court granted the motion for delayed appeal. (R. 10-1, PageID# 129, Exh. 10). On September 18, 2015, counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) indicating there were no meritorious issues to raise on appeal. (R. 10-1, PageID# 130-140, Exh. 11). On the same date, counsel filed a motion to withdraw from the case. (R. 10-1, PageID# 145-146, Exh. 12). The court allowed Carter twenty days to file a response raising any points he felt were necessary. (R. 10-1, PageID# 147, Exh. 13). Carter filed a motion to dismiss the *Anders* brief and sought appointment of new counsel. (R. 10-1, PageID# 148-155, Exhs. 14 & 15). The court denied Carter's motions and conducted an independent review. (R. 10-1,

PageID# 156, Exh. 16). Thereafter, the court appointed new appellate counsel for Carter.  (R. 10-1, PageID# 157-158, Exh. 17).

Carter, through new appellate counsel, set forth the following assignments of error:

1.     Nathaniel Carter Jr.'s constitutional and statutory right to a speedy trial was violated when the trial date was unreasonably continued outside the statutory timeframe. It is ineffective representation by defense counsel to fail to move the court to dismiss on speedy trial issues to further protect the issue on appeal. This court can review as failure to raise the issue is plain error which Mr. Carter has not waived.

2.     It was improper to allow the testimony of Lt. Jerry Hughes who testified without objection that Nathaniel in his interview was "acting like he did it" even though he "wasn't admitting that he did it." It is ineffective assistance to fail to object to this testimony giving subjective opinion as to what Nathaniel actually meant by his behavior.

3.     Nathaniel Carter was rendered ineffective assistance of counsel through trial defense by counsel's failure to meet the standard of professional conduct required in various parts of the trial.

4.     The verdict was against the manifest weight of evidence. The State of Ohio failed to establish beyond a reasonable doubt when viewed by the manifest weight of evidence that Nathaniel Carter was involved in the murder of Donald Carter. The court erred, therefore, in failing to grant Mr. Carter's Rule 29 motion for acquittal.

(R. 10-1, PageID# 164, Exh. 18). On December 6, 2017, the state appellate court overruled all four assignments of error and affirmed the judgment of the trial court. (R. 10-1, PageID# 230-247, Exh. 20).

On January 22, 2018, Carter, *pro se*, filed a notice of appeal with the Supreme Court of Ohio. (R. 10-1, PageID# 248-249, Exh. 21). On the same date, he filed his memorandum in support of jurisdiction asserting the following propositions of law:

I.     Appellant's Constitutional and Statutory right to a speedy trial was violated when the trial date was unreasonabl[y] continued outside the timeframe. It is ineffective representation by trial counsel to fail to move the court to dismiss on a speedy trial issues [sic] to further protect the

issue on appeal. The court can review as a failure to raise this issue is [sic] plain error which appellant has not waived.

II.     It was improper to allow the testimony of L.T. Jerry Hughes who testified without objection that appellant in his interview was "acting like he did it" even though he "wasn't admitting that he did it." It is ineffective assistance to fail to object to this testimony giving subjective opinion as to what appellant actually meant by his behavior.

III.    Appellant was rendered ineffective assistance of counsel through trial defense by counsel's failure to meet the standard of professional conduct required in various parts of the trial.

IV.     The verdict was against the Manifest weight of evidence. The State of Ohio failed to establish beyond a reasonable doubt when viewed by the manifest weight of the evidence that appellant was involved in the murder of Donald Carter. The court erred, therefore, in failing to grant appellant's rule 29 motion for acquittal.

V.      The appellate court erred in not doing a Constitutional review of appellant's Speedy trial issue when it was framed in a U.S. Constitutional context, and further erred in deciding they could not fully analyze whether appellant was brought to trial within the time frame.

(R. 10-1, PageID# 250-267, Exh. 22). On May 9, 2018, the Ohio Supreme Court declined to

accept jurisdiction of the appeal pursuant to S.C.Prac.R. 7.08(B)(4). (R. 10-1, PageID# 286, Exh.

23).

**C.     Federal Habeas Petition**

Carter, *pro se*, filed a Petition for Writ of Habeas Corpus. Petitioner raises the following

grounds for relief:

**GROUND ONE**: Right to a Speedy trial was violated.

*Supporting Facts*: No motions were filed and no motion for discovery was filed tolling the speedy trial time.

**GROUND TWO**: Improper testimony admitted at trial.

*Supporting Fact*s: Lt. Jerry Hughes of the Akron Police Department was allowed to testify as to matters outside his training.

**GROUND THREE**: Ineffective assistance from counsel

*Supporting Facts*: No witness was able to point Nathaniel Carter Jr. as the shooter. Defense counsel failed to object when the State sought to lay foundation as to identity of the through [sic] examination of Tracy Lynn [W].

**GROUND FOUR**: Verdict was against the manifest weight of evidence

*Supporting Facts*: The State failed to provide sufficient evidence such that the jury lost its way and a manifest injustice resulted against Nathaniel Carter Jr.

(R. 1, PageID# 5-10).

## II.   Review on the Merits[2]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] Although Respondent has asserted that the petition contains unexhausted or procedurally defaulted claims, the court will address cognizable claims on their merits. Moreover, this court is not obligated to resolve the procedural default issue, and may in its discretion decide the petition on the merits. *See, e.g., Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *accord Pritchett v. Berghuis*, 2016 U.S. Dist. LEXIS 165947 at n. 2 (W.D. Mich. Nov. 5, 2016) (observing that both the Supreme Court and the Sixth Circuit have indicated that a district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim in order to promote expediency); *see also Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6ᵗʰ Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6ᵗʰ Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal district court, however, may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6ᵗʰ Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6ᵗʰ Cir. 1998)).

6

**A.  Ground Four: Manifest Weight and Sufficiency of the Evidence**[3]

In ground four, Petitioner asserts that the verdict was against the manifest weight, and proceeds to argue that the jury lost its way because the State failed to provide sufficient evidence supporting the convictions. (R. 1, PageID# 10). Petitioner plainly conflates and mixes the standards governing sufficiency of the evidence claims with manifest weight of the evidence claims. The court shall only address Petitioner's fourth ground for relief to the extent it raises a sufficiency of the evidence argument, as manifest weight claims are not cognizable on federal habeas review.[4]  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Gibson v. Miller*, No. 5:15CV119, 2016 WL 6277229 at *1 (N.D. Ohio Oct. 27, 2016) ("contentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims").

Turning to the sufficiency claim, the United States Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported

---

[3] The court intentionally addresses the grounds for relief out of order as it makes more analytical sense to do so.

[4] As explained in a decision from the United States District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio May 12, 2006) (*quoting State v. Martin*, 20 Ohio App. 3d 172, 20 Ohio B. 215, 485 N.E.2d 717 (Ohio Ct. App. 1983)). A federal habeas court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," and, therefore, this Court cannot decide whether Carter's convictions were against the manifest weight of the evidence. *Id.*

by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979) (emphasis in original). "In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses." *Wilson v. Tibbals*, No. 1:13CV00365, 2015 WL 1980714 at *5 (N.D. Ohio Apr. 30, 2015) (Pearson, J.) (*citing Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to the state court's factual determinations and "[a]ny conflicting inferences arising from the record, including credibility conflicts, should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) (*citing Walker*, 703 F.3d at 969-70).

Furthermore, the Supreme Court has emphasized that a state court's determination as to the sufficiency of the evidence is entitled to "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury--not the court--to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord Gipson v. Sheldon*, 2016 WL 4887471 at **14-15 (6th Cir. Sept. 14, 2016) ("AEDPA and *Jackson* together create two layers of judicial deference: First, we must defer to the jury's rational conclusions drawn from the

evidence…. Second, we must defer to the state court's decision rejecting a sufficiency of the evidence claim.") (internal citations omitted).

The state appellate court addressed this argument as follows:

[*P6] In his fourth assignment of error, Carter contends that his convictions are both unsupported by sufficient evidence and against the manifest weight of the evidence. We disagree.

[*P7] "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶33.

[*P8] A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. When applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist. 1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, 6 N.E.3d 649, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

[*P9] This matter implicates Carter's convictions for murder, felonious assault, having weapons while under disability, and tampering with evidence, along with the attendant firearm specifications thereto. On appeal, Carter does not dispute the underlying elements of these offenses. Rather, Carter contends that the State

failed to meet its burden of production solely with respect to the issue of identity. As such, we will confine our analysis to this issue.

[*P10] "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶13, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶19 and *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶11. "[D]irect or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime." *Collins* at ¶ 19, citing *Lawwill* at ¶11.

[*P11] At trial, four of the State's 21 witnesses positively identified Carter as the "drive-by" shooter on the night in question. First, Tracy W., the mother of the victim's best friend, Dana W., testified that she was hosting a birthday party for her adult nephew on the night in question. Tracy W. testified that while she was in the backyard of a neighboring building preparing to cut the birthday cake, her son, Dana W., daughter, Taresa W., niece, Dominique W., and the victim were all hanging out on the stoop area of her apartment building on the corner of Marcy Street and Cole Avenue. Tracy W. testified that as she was about to cut the cake, she heard several gunshots. She stated that upon hearing the gunshots, she "looked and [she] seen a red truck go by and [she] seen the shots coming from the truck." She then testified that she immediately called 9–1–1 after observing that the victim had been shot. Tracy W. stated that when the police arrived at the scene, she informed them that Nathaniel Carter, Jr. was the shooter. Tracy W. proceeded to identify Carter in court as the person who shot and killed the victim on the night in question.

[*P12] Second, Taresa Lynn W. testified that on the night in question, she was sitting in front of her mother's building on Cole Avenue with her brother, Dana W., her cousin, Dominique W., and the victim. Taresa W. also testified that she was aware that Dana W. and Carter had a contentious relationship, including a violent confrontation that occurred just two days prior to the day in question. She further testified that at some point while the four of them were conversing, Sheldon C., one of Carter's "really good friends," drove down the street and looked at them. According to Taresa W.'s trial testimony, Dana W. then stated, "I bet you any amount of money [Sheldon C. is] about to call [Carter] and tell him I'm out here." She testified that approximately 15-20 minutes later, she saw a red truck driving down the street in their direction. Taresa W. testified that she was fearful and began to run around the apartment building, at which time she heard gunshots. She testified that "[w]hen I turned as I was running around trying to look and see, that's when I see [Carter] ride by shooting." Taresa W. subsequently identified Carter in court as the shooter on the night in question.

[*P13] Third, Theresa T. testified that she was visiting with family at her daughter's house on Andrus Street on the night in question. Evidence presented at trial demonstrated that the crime scene is located just down the street and is visible from the front of Theresa T.'s daughter's house. Theresa T. testified that at some point that evening, she saw Dana W., who was standing on Cole Avenue near Marcy Street, fall to the ground and begin crawling. Theresa T. also testified that she then saw bullets ricochet on the sidewalk near Dana W.'s foot or ankle. Theresa T. testified that as she was in the process of moving her family members to safety, she saw a red SUV turn off of Cole Avenue onto Andrus Street and drive right past her location. Theresa T. testified that as the red SUV drove by, the driver "did a mean mug at us," which she clarified was a mean and threatening expression. Theresa T. subsequently identified Carter in court as the man driving the red SUV who made the "mean expression" at her.

[*P14] Lastly, Cheryl D., Theresa T.'s sister, testified that she was staying at her niece's house on the corner of Andrus Street and Cole Avenue on the night in question. Cheryl D. testified that she did not know Dana W. or the victim. Cheryl D. further testified that she was sitting on the front porch of her niece's house with her sister that evening while "[t]he kids were outside playing in the front yard." She stated that from her vantage point, she could see the corner of Marcy Street and Cole Avenue "very well." She testified that at some point that evening she "heard gunshots. About six of them went off, pop, pop, pop, pop, pop[.]" Cheryl D. explained that she recognized the sounds as gunfire and immediately ordered the children to "[g]et in the house and lay on the floor." She testified that when she looked up, she saw a red truck turn right onto Andrus Street and drive past her. Cheryl D. testified that the driver of the red truck "turned around and looked at me and him and me made direct contact. I turned around and I said, 'That's the shooter,' like that." Cheryl D. stated that the driver "had a real mean look on his face. He looked me straight in my eyes. He was real mean and, you know, had a real mean frown on his face and—and I looked. I said, 'That's the shooter.'" Cheryl D. explained that she concluded that the man in the red truck was the shooter "'[c]ause of the expression on his face and at the time that he made the turn [onto Andrus Street] the shots stopped. They stopped. And everything came to a stop, and he was the only thing moving at that time." She then identified Carter in court as the driver of the red truck on the night in question.

[*P15]   Viewing this evidence in a light most favorable to the State, we determine that any rational trier of fact could have found beyond a reasonable doubt that Carter was the individual who committed the charged offenses on the night in question. This evidence, if believed, demonstrates that while he was driving a red vehicle, Carter committed a "drive-by" shooting, which killed the victim on the night of June 11, 2014. Accordingly, we conclude that the State met its burden of production at trial.

[*P16] Turning to his manifest weight argument, Carter contends that his convictions are against the manifest weight of the evidence because Dana W. and members of Dana W.'s family provided biased and unreliable testimony on the State's behalf. However, this Court has routinely held that "[c]redibility determinations are primarily within the province of the trier of fact." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶42, citing *State v. Violett*, 9th Dist. Medina No. 11CA0106-M, 2012-Ohio-2685, ¶11. "The fact-finder 'is free to believe all, part, or none of the testimony of each witness.'" *Id.*, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶35. Here, the jury reviewed all of the evidence and assessed the credibility of each witness. The jury apparently accepted the testimony of the State's witnesses which, if believed, supports the conclusion that Carter shot and killed the victim on the night in question. After reviewing the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting Carter of the charged offenses, especially considering the fact that two disinterested witnesses, Theresa T. and Cheryl D., buttressed the W. family's testimony that Carter was the individual responsible for the fatal "drive-by" shooting.

[*P17] Carter's fourth assignment of error is overruled.

*State v. Carter*, 2017-Ohio-8847, ¶¶ 5-17, 100 N.E.3d 1107, 1111-14 (Ohio Ct. App. 2017).

First, the court finds the state appellate court correctly identified the standard of review for sufficiency of the evidence claims. The court has reviewed the pertinent trial testimony regarding identification. Taresa W. testified that she was acquainted with the Defendant and had interacted with him in the past. (R. 10-9; Tr. 206). She witnessed a red truck approaching and both saw and heard shots coming from the vehicle. (Tr. 214). As she was running towards the back of the building, she turned around and saw Carter "ride by shooting." *Id*. Tracy W. testified that she heard gunshots and then "I seen a red truck go by and I seen the shots coming from that truck." (Tr. 173). When police arrived on the scene, Tracy W. identified Carter as the shooter, and also identified him in court. (Tr. 178-180). She further testified that Defendant was driving the red truck on the day of the shooting, and fired shots from the vehicle. (Tr. 181). Theresa T. testified that she saw someone crawling while bullets ricocheted from the sidewalk near the individual, that a red SUV rounded the corner from the scene of the shooting, that the occupant

12

of the SUV "did a mean mug" at her, and she identified Carter in court as the same individual. (R. 10-9, Tr. 126, 131-132). Cheryl D. testified that she could see the intersection where the shooting occurred "very well," that she looked up when she heard gunshots and saw a red truck round the corner of the intersection, that the individual in the red truck looked right at her, and that the individual she saw in the truck was Petitioner. (R. 10-9, Tr. 114-118).

Neither the habeas petition nor the traverse make any meaningful argument as to why Petitioner believes his conviction was not supported by sufficient evidence. (R. 1, 16). Before the state court, Petitioner had argued that "no witness had identified [him] as the shooter, only a red vehicle." (R. 10-1, PageID# 192). As the state appellate court reasonably found, this is simply inaccurate. Petitioner also contended that the testimony of some of the witnesses, who happened to be family members of the victim, was biased. *Id*. The issue of bias is, at its core, an issue of credibility. It was for the jury to decide whether the witnesses were credible. A habeas court may not reweigh the credibility of witnesses and offer its own conclusion.

Given the witness testimony cited above, which the state appellate court identified, the court finds nothing unreasonable about the state court's determination that a rational trier of fact, under these circumstances, could have credited the testimony of the witnesses, and that said testimony was sufficient to establish that it was Carter who drove a red truck down the street, and fired gunshots at the victim thereby causing his death.

For the reasons stated, the court recommends finding ground four to be without merit.

## B. Ground One: Speedy Trial Rights

In his first ground for relief, Petitioner asserts that his speedy trial rights were violated, without specifying whether his claim is based on the United States' Constitution or whether it is

based on Ohio law.[5] (R. 1, PageID# 5). To the extent Petitioner asserts a violation of Ohio law, statutory or constitutional, such a claim is not cognizable upon federal habeas review.[6]

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...." U.S. Const. Amend VI. The Supreme Court has recognized the federal constitutional right to a speedy trial permits some delays, which, depending on the circumstances of each case, cannot "be quantified into a specified number of days or months." *Barker v. Wingo*, 407 U.S. 514, 521-23, 92 S. Ct. 2182 (1972). The *Barker* decision established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id*. at 530. The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.

"The first [factor] … is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay …." *Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686 (1992) (internal quotation marks omitted); *accord United*

---

[5] While the traverse references both federal and state speedy trials rights, the argument is confined to the latter. (R. 16, PageID# 1295-1300).

[6] "Because petitioner's second ground for relief is premised on his interpretation of his state statutory rights, it fails to raise a cognizable claim for federal habeas relief." *Herron v. Kelly*, 2013 U.S. Dist. LEXIS 89754, at *14-15, 2013 WL 3245326 (N.D. Ohio June 26, 2013) (Lioi, J) (citing *Norris v. Schotten*, 146 F.3d 314 (6th Cir. 1998); *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475 (1991)).

*States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) ("The first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases."); *United States v. Smith*, 94 F.3d 204, 208-209 (6th Cir. 1996) ("the 'length of the delay is to some extent a triggering mechanism,' and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, 'there is no necessity for inquiry into the other factors that go into the balance.'"). "A delay that approaches one year is 'presumptively prejudicial,' and triggers the speedy trial analysis." *United States v. Flowers*, 476 Fed. App'x 55, 60 (6th Cir. 2012) (citing *Doggett*, 505 U.S. at 652).

Petitioner asserts that he was arrested on June 12, 2014. (R. 16, PageID# 1297). Therefore, the time between his arrest and his trial was 137 days or four months and fifteen days. The Sixth Circuit Court of Appeals has explained that "[d]elays several months short of one year are not uncommonly long ..." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). In fact, the *Gardner* court ceased its examination of the speedy trial issue where the delay was 265 days (or nearly nine months). *Id.*; *see also Perry v. Warden of Mansfield Corr. Inst.*, No. 5:13-cv-01196, 2014 U.S. Dist. LEXIS 183744, at *56 (N.D. Ohio Aug. 4, 2014) (White, M.J.) (finding that a 278 day delay between the date of the habeas petitioner's arrest and trial was not presumptively prejudicial); *United States v. Cummings*, 2012 U.S. Dist. LEXIS 137467, 2012 WL 4442738, at *4 (S.D. Ohio Sept. 25, 2012) (holding seven months and eight days was not presumptively prejudicial). Other circuit courts have found delays of approximately seven months insufficient to trigger a full speedy trial analysis under *Barker*. *See, e.g., United States v. Lugo*, 170 F.3d 996, 1002 (10th Cir. 1999) ("[T]he delay of approximately seven months, even if not excusable, is not 'presumptively prejudicial' and, therefore, a *Barker* analysis is not necessary."); *United States v McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (lapse of "a little

over seven months" was "too brief to trigger review of Sixth Amendment speedy trial claim");

*United States v. MacDonald*, 635 F.2d 1115, 1117 (4th Cir. 1980) (delay of "at most seven

months" found to be "entirely too short to 'trigger' further inquiry under *Barker*").

In this case, the 137 days elapsed between arrest and trial does not approach the

presumptively prejudicial threshold. Therefore, further inquiry is not necessary. Under such

circumstances, the state appellate court's resolution of Petitioner's federal speedy trial claim, to

the extent it was even raised, cannot be said to run afoul of clearly established federal law.

Petitioner also argues that defense counsel was ineffective for not raising a statutory

speedy trial claim. As stated above, a violation of Ohio's speedy trial statute does not present a

cognizable claim for federal habeas review. However, the court will consider Petitioner's

argument through the lens of an ineffective assistance of trial counsel claim.[7]

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to

effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012); *Joshua v. DeWitt*,

341 F.3d 430, 437 (6th Cir. 2003) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14

(1970). The Sixth Circuit discussed the general standard for ineffective assistance of counsel in

*Monzo v. Edwards*:

> To establish ineffective assistance of counsel under *Strickland*, the defendant
> must show that his counsel's performance fell below an objective standard of
> reasonableness and that his counsel's errors were so serious as to prejudice the
> defendant. Review of counsel's performance is highly deferential and requires
> that courts "indulge a strong presumption that counsel's conduct falls within a

---

[7] Pursuant to Ohio law, "[a] person against whom a charge of felony is pending ... [s]hall be
brought to trial within two hundred seventy days after the person's arrest." O.R.C. §
2945.71(C)(2). Furthermore, pursuant to O.R.C. § 2945.71(E), "[f]or purposes of computing
time under divisions ... (C)(2) ... of this section, each day during which the accused is held in jail
in lieu of bail on the pending charge shall be counted as three days." As such, the time limit for a
defendant charged with a felony and held in jail is effectively reduced from 270 to 90 days. *See,
e.g., State v. MacDonald*, 357 N.E.2d 40, 43, 48 Ohio St.2d 66, 70 (Ohio 1976).

wide range of reasonable professional assistance." To establish prejudice, the
defendant "must show that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. A
reasonable probability is a probability sufficient to undermine confidence in the
outcome."

281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted); *see generally Strickland v.*

*Washington*, 466 U.S. 668, 689 (1984).

A habeas court must approach the state court's rulings in a highly deferential manner.

The Supreme Court stated that the "pivotal question" of whether the state court's application of

*Strickland* standard was unreasonable is different from simply deciding whether counsel's

performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The focus on habeas review is "not whether counsel's actions were reasonable," rather, the

question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard." *Id.* at 105. The Court in *Richter* instructed that the petitioner must show

that the ruling of the state court "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." 562 U.S. at 103; *see also Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir.

2011) (en banc), *cert. denied*, 566 U.S. 991 (2012). The Supreme Court acknowledged that,

under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so. *Id.* at

102; *see also Montgomery*, 654 F.3d at 676.

The state court of appeals addressed Carter's ineffective assistance of counsel claim as

follows:

[*P27] "The Sixth Amendment guarantees a criminal defendant the right to the
effective assistance of counsel." *State v. Liu*, 9th Dist. Summit No. 24112, 2008-
Ohio-6793, ¶22, citing *State v. Banks*, 9th Dist. Lorain No. 01CA007958, 2002-
Ohio-4858, ¶16. "On the issue of counsel's ineffectiveness, [Carter, as the
Appellant,] has the burden of proof because in Ohio, a properly licensed attorney

is presumed competent." *State v. Gondor*, 112 Ohio St. 3d 377, 2006-Ohio-6679, ¶ 62, 860 N.E.2d 77. To prove ineffective assistance of counsel, Carter must establish that (1) his trial counsel's performance was deficient, and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate prejudice, an appellant "must prove that there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶10.

[*P28] However, we conclude that Carter has failed to meet his burden of demonstrating that he was prejudiced by his trial counsel's failure to file a motion to dismiss on the basis of a speedy trial violation. First, as discussed above, Carter does not argue that it was unreasonable for the trial court to continue his trial due to the trial court's unavailability. Nonetheless, a review of the record shows the trial court was scheduled to commence multiple trials which would conflict with Carter's September 15, 2014 trial date. Those cases included a four to six week capital case and a homicide case that had been pending longer than the present case. Second, while Carter asserts in his brief that "[n]o motions were filed, and no motion for discovery was filed tolling the speedy trial time[,]" such a claim is belied by the pretrial transcripts. Although a review of the record does not show when or if a motion for discovery was ever filed with the clerk of the Summit County Court of Common Pleas, a review of the transcript from the July 16, 2014 pretrial conference reflects that Carter's trial counsel represented to the trial court that he had made a motion for discovery. Indeed, the prosecutor subsequently referenced the defense's discovery motion at the August 20, 2014 status conference wherein the speedy trial issue was discussed at length. Nonetheless, the record is devoid of any information as to what date the motion was made or when the State complied with the discovery request. Absent these dates, this Court is unable to fully analyze whether Carter was brought to trial within the timeframe set forth in R.C. 2945.71(C)(2) and R.C. 2945.71(E), as we cannot discern the tolling period applicable in this matter.

[*P29] Therefore, we determine that Carter has failed to meet his burden of demonstrating actual prejudice from his trial counsel's failure to file a motion to dismiss on the basis of a speedy trial violation.

*Carter*, 2017-Ohio-8847 at ¶¶ 27-29.

The court finds nothing unreasonable about the state appellate court's application of

clearly established federal law. Indeed, the *Strickland* standard requires a showing of prejudice

stemming from counsel's alleged ineffectiveness. The state appellate court noted that, contrary to Carter's claims that no motions were filed on his behalf that could toll the state speedy trial clock, defense counsel represented to the trial court that he had indeed made a motion for discovery. In addition, the state appellate court found that Ohio law permits a tolling of the speedy trial clock for "[t]he period of any continuance granted on the accused's own motion, and *the period of any reasonable continuance granted other than upon the accused's own motion*[.]" Carter, 2017-Ohio-8847 at ¶22 (emphasis added) (quoting O.R.C. § 2945.72(H)).

"It is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of state law where, as in the present situation, Ohio's appellate courts on direct appeal have already found appellant's claim of a violation of his statutory right to a speedy trial to be meritless." *Norris*, 146 F.3d at 328. Because the state appellate court reasonably found no merit to Carter's statutory speedy trial claim, there is no basis to conclude counsel prejudiced Petitioner by failing to seek dismissal on speedy trial grounds.

**C. Ground Three: Ineffective Assistance of Counsel**

In his third ground for relief, Petitioner raises another claim of ineffective assistance of counsel based on the faulty premise that no witness identified him as the shooter. (R. 1, PageID# 8). As indicated above, at least two witnesses testified expressly that he was the shooter.

Petitioner contends counsel was deficient when he failed to object "to the foundation testimony of Tracy W." or to cross-examine her. First, counsel objected numerous times during this point in Tracy W.'s testimony, objections which the court sustained. (R. 10-9, Tr. 164, 168, 169, 187). Petitioner offers no other specific examples of testimony that was objectionable to which counsel was remiss in failing to object. In addition, defense counsel did indeed cross-examine Tracy W. (R. 10-9, Tr. 188-198). Counsel extensively questioned Tracy W. about where

she was when she heard the shooting, and other aspects of her direct testimony. *Id*. Petitioner

appears to believe that Tracy W.'s direct testimony identifying him as the shooter was

ambiguous, vague, or somehow inconsistent with the rest of her testimony. Possibly, defense

counsel believed the same and opted against specifically asking Tracy W. on cross-examination

whether she actually saw Carter fire shots from the red truck in order to maintain some sense of

uncertainty in the minds of the jurors. The state appellate court reasonably concluded as follows:

> [*P36] Several courts have held that "decisions regarding cross-examination are
> within trial counsel's discretion and generally do not form the basis for a
> claim of ineffective assistance of counsel." *State v. Harris*, 10th Dist. Franklin
> Nos. 09AP-578, 09AP-579, 2010-Ohio-1688, ¶28, citing *State v. Flors*, 38 Ohio
> App.3d 133, 139, 528 N.E.2d 950 (8th Dist. 1987) and *State v. Woods*, 4th Dist.
> Ross No. 09CA3090, 2009-Ohio-6169, ¶25. Moreover, "[i]t is well settled that
> 'trial counsel's failure to make objections are "within the realm of trial tactics"
> and do not establish ineffective assistance of counsel.'" *State v. Cureton*, 9th Dist.
> Medina No. 01CA3219-M, 2002-Ohio-5547, ¶55, quoting *State v. McCroskey*,
> 9th Dist. Wayne No. 96CA0026, 1997 Ohio App. LEXIS 1276, *12 (Apr. 2,
> 1997), quoting *State v. Hunt*, 20 Ohio App.3d 310, 311, 20 Ohio B. 411 , 486
> N.E.2d 108 (9th Dist. 1984).

*Carter*, 2017-Ohio-8847 at ¶36. The state court's reasoning is perfectly consistent with federal

law, as mere disagreements by a defendant with tactics or strategies employed by counsel are not

enough to support a claim of ineffective assistance of counsel, and there is a presumption that the

challenged conduct of a petitioner's counsel was a matter of strategy. *Strickland*, 466 U.S. at

689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990), *cert. denied*, 498 U.S. 1002

(1990).

It is therefore recommended that ground three be found to be without merit.

**D. Ground Two: Improper Testimony**

In his second ground for relief, Petitioner asserts that improper testimony was admitted at

trial. (R. 1, PageID# 7). Specifically, Petitioner contends Lt. Jerry Hughes of the Akron police

department was permitted to testify as to matters outside his training.[8] *Id*. Though it is not clear from the petition itself, the traverse appears to frame the issue as one of ineffective assistance of counsel, as Petitioner emphasizes that the line of questioning to which he objects went unchallenged by defense counsel. (R. 16, PageID# 1301-1302).

The United States Supreme Court has repeatedly stated that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984). Errors in the application of state law, such as rulings regarding the admission or exclusion of evidence, are not to be questioned in a federal habeas corpus proceeding. *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). In order to establish an entitlement to habeas relief, a petitioner must establish an infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). Generally, an error of state law in the admissibility of evidence does not constitute such an infringement and, therefore, is not cognizable in a habeas proceeding. *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). AEDPA bestows wide latitude upon the States with respect to ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001). Mere disagreement with a state court's evidentiary ruling does not furnish a basis for habeas relief unless said rulings were contrary to rulings of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. *See, e.g., Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000).

---

[8] The traverse primarily takes issue with Lt. Hughes' opinion that Carter was "acting like" he was guilty. (R. 16, PageID# 1301, citing R. 10-10, Tr. 311).

Thus, the court construes this ground for relief solely through the lens of an ineffective

assistance of counsel claim. The state appellate court addressed this argument as follows:

> [*P33] In his second assignment of error, Carter argues that his trial counsel was
> ineffective by not objecting to Lieutenant Jerry Hughes' allegedly improper
> opinion testimony. Namely, Carter maintains that his trial counsel should have
> objected when Lt. Hughes testified that Carter acted like he was guilty during his
> police interrogation, despite the fact that Carter never confessed to the charged
> offenses. Additionally, Carter argues that his trial counsel should have objected
> when Lt. Hughes testified that Carter appeared to be "wrestling or coming to grips
> with" his actions, noting that Carter appeared to realize that his "life is over" "if
> [he] get[s] convicted of this murder[.]" Carter asserts that apart from being
> prejudicial, Lt. Hughes' opinion testimony was speculative, improper for a lay
> witness, and the product of several lines of leading questions from the prosecutor.

> [*P34] However, "this Court has consistently held that 'trial counsel's failure to
> make objections is within the realm of trial tactics and does not establish
> ineffective assistance of counsel.'" *State v. Bradford*, 9th Dist. Summit No. 22441,
> 2005-Ohio-5804, ¶27, quoting *State v. Taylor*, 9th Dist. Lorain No. 01 CA007945,
> 2002-Ohio-6992, ¶76. Viewing Lt. Hughes' purportedly improper
> testimony in the aggregate, we conclude that Carter has failed to meet his burden
> of demonstrating that such testimony was actually prejudicial to his defense.
> Assuming without deciding that Lt. Hughes' testimony was improper, we cannot
> say that there was a reasonable probability that the results of Carter's trial
> would have been different but for trial counsel's failure to object to this
> testimony, especially considering the fact that four different witnesses identified
> Carter as the "drive-by" shooter on the night in question. *See State v. Russell*, 10th
> Dist. Franklin No. 03AP-666, 2004-Ohio-2501, ¶52 (finding that even if trial
> counsel's failure to object to opinion testimony was not justified on tactical
> grounds, appellant was not prejudiced since "there is no reasonable probability
> that, but for the failure to object, the results of the proceeding would have been
> different."). Accordingly, we determine that Carter's second assignment of error
> is without merit.

*Carter*, 2017-Ohio-8847 at ¶¶33-34.

Again, the court finds nothing contrary to clearly established federal law in the state

appellate court's opinion that the decision to object lies within counsel's trial strategy. Moreover,

to establish the requisite prejudice to prevail on a claim of ineffective assistance of counsel,

Carter must show that there was a reasonable probability that, but for counsel's failure to object

to Lt. Hughes's testimony, the result of the trial would have been different. The court cannot take any issue with the state court's determination that prejudice was lacking, because four eyewitnesses place Carter at the scene of the crime as the shooter and operator of the red truck in the "drive by" shooting. Thus, Petitioner's final ground for relief is without merit.

### III. Conclusion

For the foregoing reasons, it is recommended that Petitioner's Petition for a Writ of Habeas Corpus be DENIED.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: June 23, 2021

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**